**UNITED STATES of America**

v.

**Wanda GONSIEWSKI.**

**Cr. No. 22806.**

United States District Court
E. D. Pennsylvania.

Dec. 27, 1967.

Austin Hogan, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

William A. Dwyer, Jr., Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION

FULLAM, District Judge.

The defendant stands convicted of bribing an Internal Revenue Service agent in violation of 18 U.S.C. § 201(b)(3), and is seeking a new trial. The indictment contains two counts: the first count charges that, on February 9, 1967, the defendant offered to pay $500.00 to agent Schmukler in order to induce him not to investigate her 1963 income tax return; and the second count charges her with payment of the $500.00 bribe on February 10, 1967. The jury returned a verdict of guilty as to the second count only; simultaneously, the jury made the unsolicited announcement that they stood nine to three in favor of conviction as to the first count, whereupon the court declared a mistrial as to the first count. After the jury was polled, and verified their unanimity as to the second count, the verdict of guilty was recorded.

On June 19, 1967, within the period prescribed by Fed.R.Crim.P. 33, the defendant filed a written motion for a new trial, asserting only that the verdict was contrary to the evidence, the weight of the evidence, and the law. Although counsel purported to reserve the right to file additional reasons after the transcription of the notes of testimony, no additional reasons have been filed.

When the motion came before the court for argument on October 16, 1967, counsel for the defendant requested a continuance until sometime after the forthcoming municipal elections of November 7, 1967, because of his erroneous belief that the argument was scheduled for October 26th, and because of his involvement in an election campaign. The argument was therefore continued until November 20, 1967. On November 20th, defense counsel was not prepared to argue the motion, stating that he had belatedly discovered that he had neglected to order the transcription of the notes of testimony of the trial, until shortly before the argument, and that he had not been furnished with a copy of the transcript sufficiently in advance of the scheduled argument to prepare his brief. Counsel for the defendant asked, and was granted, leave to submit his argument on briefs. It was ordered that the brief of the defendant should be filed within 10 days from November 20, 1967, and that the government would be afforded an additional five days to file a reply brief if desired. Defense counsel finally filed his brief on December 15, 1967. The brief makes no mention of any of the grounds alleged in the written motion for new trial, but instead attempts to assert for the first time, as the sole basis for granting a new trial, an alleged error in a ruling on evidence.

Inasmuch as the defendant herself testified at the trial that she had indeed paid the $500.00 bribe to agent Schmukler in the hope that he would refrain from investigating the 1963 income tax return filed jointly by the defendant and her husband, it is understandable that counsel seems to have abandoned the general grounds asserted in the written motion. But on the off chance that this seeming abandonment may prove to have been inadvertent, I will now state that I have considered the grounds alleged and have concluded that there is no merit to the claim that the verdict was against the evidence, the weight of the evidence, or the law. The defendant's own testimony at trial could almost be regarded as a binding judicial admission of guilt.

The evidentiary ruling complained of in defendant's brief is not properly before the court. However, it is appropriate to note that this contention, too, is lacking in substantial merit.

Briefly, the government's evidence showed that the defendant and her husband operate a taproom in the northeast section of Philadelphia. On or about November 9, 1966, agent Schmukler was assigned to examine the joint tax returns of the defendant and her husband for the years 1964 and 1965. On November 15, 1966, Schmukler contacted the taxpayers

by telephone and was by them referred to their agent, one John G. Dillon, Sr. (since deceased), an insurance agent who handled their income tax work. On November 21, 1966, Schmukler met with Mr. Dillon and reviewed certain records; thereafter, as a result of this meeting, Schmukler met with the taxpayers at their combined home and place of business on November 23, 1966, for the purpose of reviewing certain cost of living estimates with them. On December 1, 1966, Schmukler again met with Mr. Dillon at his office and as a result of this meeting, met with the defendant at her place of business on December 6, 1966. On this occasion, Schmukler was equipped with a tape recording device and a transmitter concealed in his briefcase, and attempted to record his conversation with the defendant. However, the device did not function properly and the results were unintelligible. At this meeting, Schmukler obtained the defendant's signature to the cost of living statement for the year 1964, and indicated to the defendant the probability of extending the investigation back to the 1963 return as well. The defendant stated "Let's forget about it, it will save you all the time and aggravation", but when Schmukler persisted, the defendant again referred him to Mr. Dillon for the records. Thereafter Schmukler made several attempts to meet with Mr. Dillon, but the latter was hospitalized in what proved to be his terminal illness, and no further meeting was held.

On or about January 23, 1967, Schmukler telephoned Dillon's office and discussed with an associate the fact that the period of limitations with respect to the 1963 tax year was about to expire, and that the Internal Revenue Service wanted to obtain a waiver (Form 872). Schmukler was advised to communicate with the taxpayers directly, since the associate was not familiar with their affairs and Mr. Dillon was permanently unavailable. Pursuant to this arrangement, Schmukler met with the defendant on February 9, 1967. He was again equipped with a tape recording device and on that occasion successfully recorded his conversation with the defendant.

On direct examination, Schmukler testified to all of the foregoing facts, and also testified, without objection, that in this recorded conversation, the defendant offered him a bribe of $500.00 to "forget" the 1963 tax return. He advised the defendant that he would think it over and call her back to let her know, and later that afternoon, pursuant to instructions from his superiors, he arranged to meet with the defendant the following day to pick up the bribe money. The following day, the same procedure was followed, but in addition to equipping Schmukler with recording devices, his superiors made a complete search of his person and an inventory of all of the items in his personal possession both before and immediately after his meeting with the defendant. The defendant paid the $500.00, the conversation was recorded, and Schmukler's superiors corroborated the fact that Schmukler turned over to them immediately after his meeting with the defendant the sum of $500.00 in cash, which had not been in his possession immediately before his meeting with the defendant. The government offered in evidence the tape recordings of the February 9 and February 10 conversations, and these were played in open court. At the outset of the trial, defense counsel had been made aware of the existence of these tapes, and had been furnished with a written transcript of them. While they were received in evidence over objection, the only ground asserted in support of the objection was the contention that agent Schmukler was not lawfully upon the premises of the defendant at the time the recordings were made, because the defendant's accountant was not present. There has never been any challenge to the authenticity, accuracy or completeness of the tape recordings, and no contention is now made that there was any error in receiving them in evidence. The tape recordings leave no room for doubt about the guilt of the defendant.

The ruling presently complained of arose in the following manner: in cross

examining agent Schmukler, counsel for the defendant made a frontal assault upon his honesty and sought to wring from him an admission that he, Schmukler, had solicited a bribe from the defendant in order to obtain money for himself. Counsel also sought to establish that it was highly irregular for Schmukler to interview the taxpayers directly when they were represented by an accountant, and questioned Schmukler at great length about conversations which he had had with Dillon, the accountant. Thereupon, on redirect examination, the government was permitted to elicit from Schmukler the testimony that he had first reported to his superiors his suspicions about a possible bribe on December 1, 1966. Thereupon, the following occurred:

"Q And why did you report it to your superiors then?

"A At that time Mr. John Dillon—

"MR. DWYER: Objected to.

"THE COURT: Objection overruled. Go ahead.

"THE WITNESS: At that time Mr. John Dillon—I had asked him certain questions and at that time Mr. John Dillon stated to me that I could make some money if I would overlook certain figures on the '64 and '65 returns, and he also stated to me that he was told to approach me on this matter.

"MR. DWYER: I move that it be stricken, Your Honor. It is hearsay.

"THE COURT: Motion denied.

"The jury will understand that this evidence does not constitute evidence against the defendant but is simply the witness's explanation for the conduct which was challenged on cross examination and bears on his credibility."

■■ Although the reasons for permitting this testimony were not very well expressed at trial, I am satisfied that the evidence was properly received under the circumstances. Counsel's cross-examination of Schmukler brought into question not only his honesty, but also the credibility of his testimony that he had been equipped with tape recording devices in connection with the three sub-

sequent meetings with the defendant. Unquestionably, it was permissible to show that he had reported the incident to his superiors as early as December 1, 1966; indeed, that evidence was not objected to. I believe it was also permissible to show the circumstances which prompted the report. Contrary to counsel's argument, the verbal offer of a bribe by Dillon does not constitute hearsay evidence. Rather, it is in the nature of a "verbal act" and became relevant and admissible in this case, if for no other reason, at least for the purpose of rebutting the suggestion that Schmukler was the originator of the bribe scheme, or had made a fictitious and unfounded report in order to stir up trouble against the defendant.

■ The only part of the admitted evidence which was clearly hearsay was the sentence "He also stated to me that he was told to approach me on this matter." Upon reflection, I am inclined to believe that this portion of the answer should have been stricken; but since it did not refer in terms to the defendant, and since the jury was repeatedly cautioned that it did not constitute evidence against the defendant, no appreciable prejudice to the defendant resulted from the failure to strike that single sentence.

Moreover, a persuasive argument can be made that by questioning Schmukler at length about his various conversations with Dillon, defense counsel opened the door to letting in the entire conversation in any event.

■ Be all that as it may, it is perfectly clear that the main thrust of this challenged testimony, hence the only real possible prejudice to the defendant from this testimony, relates to the issue of entrapment, which was the only defense asserted at trial. Upon careful review of the entire record, I am now satisfied that the evidence was insufficient as a matter of law to raise a legitimate issue of entrapment for submission to the jury. Under the defendant's own testimony, it could not rationally be concluded that she was induced, coerced, or persuaded to commit a crime. United States v. Laver-

ick, 348 F.2d 708, 712–712 (3d Cir.), cert. den. 382 U.S. 940, 86 S.Ct. 391, 15 L.Ed. 2d 350 (1965).

For all of the foregoing reasons, defendant's motion for a new trial will be refused.